DONA H. SLY AND JOANN E. SLY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sly v. Commissioner
Docket No. 19030-87
United States Tax Court
T.C. Memo 1989-385; 1989 Tax Ct. Memo LEXIS 384; 57 T.C.M. (CCH) 1111; T.C.M. (RIA) 89385; July 31, 1989
*384 Held: Petitioners' entitlement to Schedule C deductions determined. Held further: Petitioners are not liable for an addition to tax for fraud pursuant to section 6653(b)(1) and (2). Michael G. Parham, for the petitioners. Linda J. Wise, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: By statutory notice dated April 15, 1987, respondent determined a deficiency in petitioners' 1983 Federal income tax in the amount of $ 25,692.82. Respondent determined additions to tax pursuant to section 6653(b)(1) [1] *385 in the amount of $ 12,846.41 and pursuant to section 6653(b)(2) in the amount of 50 percent of the interest due on the entire deficiency. After concessions, the issues for decision are (1) whether petitioners have substantiated certain travel, meal, and lodging expenses sufficiently to comply with the requirements of section 274(d); (2) whether petitioners are entitled to deductions for other Schedule C expenses; and (3) whether petitioners are liable for additions to tax for fraud. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation, supplemental stipulation, and attached exhibits are incorporated by this reference. At the time they filed their petition, petitioners [2] resided in Etowah County, Alabama. During 1983, petitioner was self-employed as a distributor for Help Educate Loyal Parents, Inc. (HELP), which provided literature designed for teaching drug abuse awareness and prevention. [3] Petitioner visited various sheriff's offices and law enforcement agencies throughout the Southeast in an effort to persuade them to utilize HELP's literature. If the agency elected to use these materials, petitioner would then contact local businesses and individuals to sell advertising space in the literature to be distributed. When he first became affiliated with *386 HELP in 1980, petitioner received a 20-percent commission on all advertisements sold plus $ 20 to $ 22 per night when he had to be away from home. In February 1982, petitioner became dissatisfied with this arrangement and began buying materials from HELP for resale on a per-item basis. This arrangement lasted only until May 1982, when petitioner again became dissatisfied and thereafter received a flat 45-percent commission on all advertisements sold. This arrangement remained in effect until August 1985, when petitioner terminated his relationship with HELP. Petitioner forwarded checks in payment for advertisements directly to HELP. These checks were sent sometimes from the field, and sometimes from petitioner's home. HELP thereupon returned petitioner's commissions to him, which he deposited in his personal checking account. In 1983, these commissions totaled $ 50,105.50. Petitioner also solicited advertisements from persons who did not wish to purchase the smallest ad available, which cost $ 140 for 1/8 of a page. Rather, these persons purchased composite ads from petitioner through the Fight Against Narcotics Club (FAN Club), which was a department of the Universal Church *387 of Jesus Christ (Church), of which petitioner was pastor. Checks for advertisements solicited through the FAN Club were deposited to the account of the Bureau of Collections, which was also a part of the Church. The Church was a corporation organized and existing under the laws of the State of Alabama. The interrelationship of petitioner, the Church, and the Bureau of Collections is discussed in detail in Universal Church of Jesus Christ, Inc. v. Commissioner, T.C. Memo. 1988-65, in which we held that the Church was not a tax-exempt organization as defined in section 501(c)(3). Facts found in that case that are relevant here are incorporated by this reference. Petitioner's business necessitated a great deal of travel. Petitioner kept receipts of some of his expenses and placed them in an envelope on a week-by-week basis. The receipts contained in each envelope represented receipts only for motel and motor fuel expenses. [4] Petitioner kept track of his mileage using the trip meters on the cars he drove. He recorded each day's mileage on a calendar which he kept on the dashboard in each of his cars, and at the end of the week would enter on the outside of the envelope the total number *388 of miles driven. Petitioner also recorded the places he had visited during that week on the outside of each envelope. During 1983, petitioner drove 55,624 miles in connection with soliciting advertisements and distributing literature for HELP. Petitioner also incurred substantial expenses for meals and lodging while away from home. Petitioner did not keep receipts for meal expenses, but rather made a notation of each day's total for meals on a slip of paper which he placed in each week's envelope. In many instances, petitioner altered or manufactured receipts for his lodging expenses and in the process inflated the amounts. In addition to claiming lodging expenses incurred on the road while distributing HELP's material, petitioner claimed a deduction of $ 204.55 for hotel expenses while attending a convention. However, he did not retain any receipts for this latter expense and has no other substantiation. Petitioner also seeks to deduct certain miscellaneous *389 Schedule C expenses which, to the extent not conceded by respondent, [5] are as follows: Item
Amount
Postage
[6] $   115.09
Accident Report
5.00
Appeal Bond, U.S. District
Court for Northern District
of Alabama
250.00
Convention Supplies
123.97
Map
1.00
Video Equipment
680.00
Slide Program
483.00
Radio
61.79
Motor
103.99
Plane Ticket, Cab Fare, and
parking for a convention to
Detroit, Michigan
383.80
Vacuum Cleaner
207.99
During 1983, petitioner paid legal fees to the persons and in the amounts as follows: Payee
Amount
Lowell Becraft
$   600.00
Walden Buttram
1,871.87
A. B. Jones, Lowell Becraft,
and Walden Buttram
900.00
Henry, Henry & Stack
1,172.54
Earl Cutler [7]
364.00
Petitioner made the following utility payments in 1983: Alabama Power Company
[8] *390 $ 2,515.08
Petrolane Gas Company
175.20
Ohatchee Water System
100.82
General Telephone & Electronics
150.00
South Central Bell
2,538.91
Petitioner claimed other Schedule C deductions for payments for repairs and improvements in the amounts and to the persons as follows: ARC Kyle, Inc.
$ 221.47
American Lumber Co.
50.20
Carlton R. Johnson
174.65
Commissioner of Licenses
21.50
Larry Cornelius
129.00
During 1983, petitioner maintained checking accounts in the name of the Church, the Bureau of Collections, and himself and his wife. For purposes of this case, petitioner conceded that the Church and its departments, including the Bureau of Collections and the FAN Club, are his alter ego. During 1983, petitioner made total deposits into these accounts of $ 91,552.82. On his 1983 return, petitioner claimed a deduction for charitable contributions to the Church in the amount of $ 11,057,91. Petitioner also claimed a deduction for a long-term capital loss on the sale of his stock in Industrial Loan Company in the amount of $ 4,249.50. Petitioner has conceded that he is entitled to neither deduction. OPINION Respondent used the bank deposits method of reconstructing petitioner's gross income. Petitioner agrees with respondent's computation of bank deposits *391 of $ 91,551.82. The parties are also agreed that this amount includes nontaxable deposits of $ 22,347 and that petitioner had net bank deposits of $ 69,204.82. Through an analysis of undeposited checks received by petitioner from HELP and of cash-out tickets accompanying petitioner's deposit slips, respondent has determined that petitioner had additional income of $ 22,956.36 in addition to $ 69,204.82 from the bank deposit analysis. Petitioner has not challenged respondent's determination of additional income. The primary issue in this case involves petitioner's entitlement to deductions for expenses incurred in the ordinary course of his trade or business pursuant to section 162. The parties have stipulated the existence and payment of a great many of petitioner's travel expenses. Respondent argues, and we agree, that stipulating the fact of such payment is not dispositive of the issue in petitioner's favor. Rather, petitioner is only entitled to deductions for those travel expenses for which his substantiation is adequate pursuant to section 274(d). Travel expenses, including meals and lodging while away from home, are required by section 274(d) to be substantiated "by adequate *392 records or by sufficient evidence corroborating the taxpayer's own statement * * *." Section 274(d) requires the substantiation of the amount of each expense, the time and place of the travel, and the business purpose of the expense. The requirements for substantiation of travel expenses are set out in more detail in section 1.274-5, Income Tax Regs. The regulations make clear that section 274(d) supersedes the doctrine of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), and that "no deduction shall be allowed a taxpayer for such expenditures on the basis of * * * approximations or unsupported testimony of the taxpayer." Sec. 1.274-5(a), Income Tax Regs.
The regulations under section 274(d) state that the elements to be proved with respect to a travel expenditure are the amount of the expense, the dates of departure and return, the destination, and the business purpose. Sec. 1.274-5(b)(2), Income Tax Regs. The rules for substantiating those elements are found in section 1.274-5(c), Income Tax Regs., which requires a taxpayer to "maintain and produce such substantiation as will constitute clear proof of an expenditure for travel * * * referred to in section 274." The regulations *393 state a preference for contemporaneous record keeping, and attach a higher degree of credibility to records kept in that manner. With respect to certain of petitioner's travel expenses, we find that petitioner maintained contemporaneous records sufficient to allow him to deduct amounts to be determined pursuant to respondent's standard deduction for transportation. As stated in our Findings of Fact, petitioner placed receipts for motor fuel and lodging into an envelope for each week during the year in question. Petitioner deducted his transportation expenses in accordance with respondent's standard mileage deduction in lieu of keeping track of his actual expenditures. He kept track of the actual miles driven on a daily basis on a calendar on the dashboard of his car. He transferred the total of each week's mileage to the outside of that week's envelope. We find that petitioner's record keeping satisfies the requirement of section 274(d) that petitioner substantiate the amount of miles driven. The motor fuel receipts contained in each envelope, the contents of which have been stipulated by the parties, support the fact that petitioner actually visited the destinations listed on the *394 outside of each envelope. Respondent does not seriously dispute petitioner's business purpose for these expenses, which we infer from the surrounding circumstances. Sec. 1.274-5(c)(2)(ii)(b), Income Tax Regs. While the "adequate records" requirement of section 274(d) requires an account book, diary, statement of expense, or similar record, section 1.274-5(c)(2)(i), Income Tax Regs., it is not necessary that the taxpayer's written record duplicate the contents of written receipts so long as the written record and the receipts complement one another. However, respondent has shown that two of the envelopes have been altered in such a way as to inpugn the credibility of petitioner's entries for mileage for those weeks. Those entries, for the weeks beginning May 16 and September 13, are unreliable, and the underlying expenses are therefore not adequately substantiated. The mileage for those weeks, which the parties have stipulated is 2,369 miles, will be subtracted from petitioner's total mileage of 55,624. We therefore hold that petitioner is entitled to a deduction for 53,255 miles at the standard mileage rate specified in Rev. Proc. 83-74, 1983-2 C.B. 593. The parties have stipulated *395 some expenses actually paid by petitioner with respect to meals and lodging. Once again, respondent's objection is that these expenditures have not been substantiated pursuant to section 274(d). On brief, petitioner stated that he "used good faith estimates to determine the amounts spent by him each day" on meals. Petitioner wrote these amounts on a piece of paper which was included in the envelope for each week. No receipts with respect to meals were retained. We therefore agree with respondent that petitioner has not adequately substantiated his actual meal expenses. Petitioner argues alternatively that he is entitled to the standard meal deduction allowed under Rev. Proc. 83-71, 1983-2 C.B. 590 "under which a taxpayer may elect to use a specified amount or amounts for meals while traveling in lieu of substantiating the actual costs of meals." 1983-2 C.B. 591. However, the standard meal deduction by its terms is to be elected on a taxpayer's return, and petitioner has made no such election. Petitioner's deductions for meal expenses are therefore denied. Respondent initially disallowed all of petitioner's deductions for lodging expenses on substantiation grounds. In the course *396 of their stipulation negotiations, the parties agreed that certain lodging expenses should be allowed as deductions to petitioner. However, respondent argues that many of the claimed lodging expenses were never actually incurred in that petitioner took a deduction for lodging which was provided in exchange for an advertisement in the materials which petitioner was selling. Petitioner concedes that he is not entitled to deductions for those expenses. Respondent also argues that petitioner altered or manufactured many receipts for lodging, a practice which petitioner has admitted. While we have little doubt that petitioner actually incurred more expenses than we allow him to deduct, his admitted alteration and manufacture of documentation makes his substantiation unreliable; it therefore does not satisfy section 274(d). After an examination of the record, and paying particular attention to the parties' supplemental stipulation, we find that petitioner is entitled to deductions for lodging expenses as follows: Week Beginning
Lodging Expenses
1/16
$  31.96
3/27
29.96
4/25
77.35
7/10
19.14
10/17
50.30
12/11
20.80
Total
$ 229.51
Petitioner claims deductions for legal fees, utilities, certain repair *397 expenses, and other expenses as set out in our Findings of Fact. Petitioner has produced copies of checks for these expenses, but his only explanation of business purposes is his own testimony, which contains no specific explanation for any item. Rather, petitioner merely responded affirmatively to his attorney's questions at trial concerning whether these expenses were incurred in the ordinary course of business. This is not the first time that petitioner has been before the Court, and our impression of him as a credible witness and a cooperative litigant is not favorable. Petitioner became only marginally more cooperative after retention of counsel. Finally, we are not unmindful of petitioner's former litigating position that the whole of his activities were in his capacity as pastor of the Church, and that all his expenses were deductible for that reason. Given petitioner's credibility, his conclusory testimony concerning the business nature of these expenditures falls far short of proving their deductibility. We therefore find that petitioner is not entitled to deduct any Schedule C expenses beyond those conceded by respondent. Respondent's determination that petitioner *398 is liable for an addition to tax for fraud pursuant to section 6653(b)(1) and (2) is based upon a number of factors. First, respondent cites petitioner's long history of using the Church as a means of carrying on profit-oriented businesses. Although petitioner had ceased using the Church as an entity through which to carry on his Bureau of Collections activities prior to 1983, respondent argues that petitioner still used the FAN Club, another department of the Church, to accept donations from persons seeking recognition in the materials distributed by HELP but who did not wish to purchase the minimum ad. Respondent also finds fraud in the alteration and manufacture of hotel receipts in support of petitioner's deductions for lodging expenses. Finally, respondent argues that petitioner fraudulently claimed deductions for charitable contributions to the Church and for a long-term capital loss with respect to the disposition of his stock in Industrial Loan Company. Under section 6653(b) respondent has the burden of proof by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To meet this burden, respondent must show that the taxpayer intended to evade taxes known to be owing *399 by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111 (1983). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Estate of Pittard v. Commissioner, 69 T.C. 391 (1977). Fraud is not to be imputed or presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, 53 T.C. 96 (1969). However, fraud may be proven by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Rowlee v. Commissioner, supra.The taxpayer's entire course of conduct may be examined to establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106 (1969). The intent to conceal or mislead may be inferred from a pattern of conduct. See Spies v. United States, 317 U.S. 492, 499 (1943). A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an *400 intent to conceal, justifies the inference of fraud. See Holland v. United States, 348 U.S. 121, 137 (1954); Otsuki v. Commissioner, supra.However, the mere failure to report income is not sufficient to establish fraud. Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962). Fraud may not be found under "circumstances which at most create only suspicion." Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950); Katz v. Commissioner, 90 T.C. 1130, 1144 (1988). Other badges of fraud which may be taken into account include: the making of false and inconsistent statements to revenue agents, Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980); the filing of false documents, Stephenson v. Commissioner, 79 T.C. 995, 1007 (1982), affd. 748 F.2d 331 (6th Cir. 1984); understatement of income, inadequate records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealment of assets and failure to cooperate with tax authorities. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court. We find that respondent has not proven fraud on the part of petitioner by clear and convincing evidence. As respondent himself *401 notes on brief, the mere fact that a taxpayer has failed to report income is not conclusive proof of fraud. Respondent has provided us with no evidence that petitioner's failure to report income from donations to the FAN Club was part of a pattern of underreporting income that would justify the inference of fraud. With respect to petitioner's altered and manufactured lodging receipts, we accept for purposes of the fraud addition only petitioner's argument that he thought he was trading two items of equal value, i.e., an advertisement for lodging. Further, we think that had petitioner sought to evade taxes with respect to his travel expenses, his attempts to do so would have been far more consistent and pervasive. Neither has respondent convinced us that petitioner's deduction with respect to charitable contributions to the Church was claimed with the intention of evading or defeating taxes. At the time petitioner filed his 1983 Federal income tax return, the declaratory judgment action concerning the Church's status as a section 501(c)(3) organization was pending. Were it not for petitioner's concession for purposes of this case that the Church was his alter ego, petitioner would *402 still have been entitled to a deduction of up to $ 1,000 for contributions to the Church. Sec. 7428(c). The Church had been operating under a favorable determination letter from May 1, 1975, until December 16, 1981. While we do not hold that a taxpayer may never be liable for an addition to tax for fraud with respect to contributions made to an organization whose section 501(c)(3) status is the subject of a pending declaratory judgment action, we do hold that respondent has not proven that this is the proper case in which to do so. Neither do we find that petitioner's claimed deduction of a long-term capital loss on the disposition of his stock in Industrial Loan Company was fraudulent. Respondent argues that petitioner made various distributions of portions of the stock in years prior to 1983, thus lowering the basis of any stock retained by petitioner. Petitioner having conceded the issue, the propriety of the deduction is not before us. However, in the absence of proof that petitioner claimed loss deductions with respect to any prior dispositions, we do not find that his claiming of a deduction in a year later than that in which he might otherwise be entitled is fraudulent. *403 While petitioner's conduct constitutes a textbook case of disregard of the rules and regulations as contemplated by section 6653(a), respondent did not determine an addition to tax for negligence or willful disregard as an alternative to the fraud addition. For all of the foregoing reasons, we find for petitioner on the issue of fraud. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.
2. JoAnn Sly is a petitioner herein solely by virtue of having signed a joint return with her husband. All subsequent references to petitioner are to Dona H. Sly.↩
3. JoAnn Sly operated a beauty parlor under the name of J & J Beauty Bar. Petitioner has not challenged any of respondent's determinations with respect to this business.↩
4. Despite the fact that he kept receipts for automobile expenses, petitioner deducted his automobile expenses pursuant to respondent's standard mileage deduction which, for 1983, is computed pursuant to Rev. Proc. 83-74, 1983-2 C.B. 593↩.
5. Respondent has conceded that petitioner is entitled to deductions for certain expenses for copier repair, convention fees, copying costs, blank receipts, a plane ticket and parking expenses with respect to a convention in New York City, a map, and one battery. ↩
6. Respondent has conceded that petitioner is entitled to a deduction for postage in the amount of $ 134.91.↩
7. Earl Cutler is not an attorney. These expenses were paid to him for legal expenses on his behalf.↩
8. Of this amount, petitioner claims a deduction only with respect to $ 1,023.54.