DONA H. SLY AND JOANN E. SLY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sly v. Commissioner
Docket No. 19030-87
United States Tax Court
T.C. Memo 1990-12; 1990 Tax Ct. Memo LEXIS 12; 58 T.C.M. (CCH) 1145; T.C.M. (RIA) 90012; January 8, 1990
*12 Held: For purposes of clarification, and to a limited extent only, we amend the wording in our opinion in Sly v. Commissioner, T.C. Memo. 1989-385. In all other respects petitioners' motion to reconsider is denied. Michael G. Parham, for the petitioners. Linda J. Wise, for the respondent. WHITAKER
SUPPLEMENTAL MEMORANDUM OPINION WHITAKER, Judge: By statutory notice dated April 15, 1987, respondent determined a deficiency in petitioners' 1983 Federal income tax and additions to tax as follows: Addition to Tax
Section
Section
Deficiency
6653(b)(1) [1]
6653(b)(2)
$ 25,692.82
$ 12,846.41
50% of the interest
due on $ 25,692.82 After concessions, respondent determined that petitioners had $ 39,791.60 in unreported income in 1983 and contested several deductions claimed by petitioners. [2]
In our opinion in Sly v. Commissioner, T.C. Memo. 1989-385, we held, *13 inter alia, that absent election on their return petitioners are not entitled to the standard meal deduction provided for in Rev. Proc. 83-71, 1983-2 C.B. 590. Further, it was implicit in our opinion, and we now make explicit, that we upheld respondent's determination that petitioners had total gross receipts for the year in issue of $ 92,161.18. Pursuant to Rule 161, petitioners move for reconsideration of our finding of total gross receipts and of our denial of a standard meal deduction. To the limited extent that we did not previously address petitioners' arguments, we discuss them here. Our prior opinion is incorporated by this reference. A. Petitioners' Total Gross Receipts for 1983
Respondent used the bank deposits method of reconstructing income in determining petitioners' gross receipts for 1983. Petitioners' net bank deposits were determined through investigation of bank deposit records. Respondent determined income in the form of undeposited receipts through examination of other records of banking transactions including cash-out slips which accompanied petitioners' bank deposits and checks which petitioners cashed but did not deposit. Petitioner Dona Sly received income *14 in 1983 as a distributor for Help Educate Loyal Parents, Inc. (HELP), through advertisement payments to the Fight Against Narcotics Club (FAN), and through donations to the Universal Church of Jesus Christ, Inc. (Church). Petitioner deposited checks made out to FAN to the account of the Bureau of Collections, which was an arm of the Church. Petitioner conceded that the Church, FAN, and the Bureau of Collections were his alter egos. See also Universal Church of Jesus Christ, Inc. v. Commissioner, T.C. Memo. 1988-65. Thus, in making our finding of total gross receipts we looked at evidence from bank accounts in the names of the Church, the Bureau of Collections, and petitioner and his wife (the Sly account). Petitioner stipulated, and we found, that he had net bank deposit receipts of $ 69,204.82 from his three bank accounts. In addition, by examining a Form 1099 and cancelled checks from HELP to petitioner, we found that petitioner received $ 50,105.50 from HELP in 1983. However, in determining petitioner's gross receipts, respondent divided petitioner's income into deposited and undeposited receipts, rather than into HELP income and non-HELP income. Respondent made a detailed *15 analysis of each item deposited in petitioner's three bank accounts. Several unidentified deposit items and cash-out slips [3] in the Sly account were attributed to HELP because of closeness in time between the check date and the deposit or cash-out date. All of the HELP income deposited, and not redeposited as transfers between accounts, went into the Sly account. None of the deposits to the Bureau of Collections and the Church accounts correspond to HELP checks. Respondent was unable to ascertain the source for certain receipts in the Sly account and for certain undeposited receipts. In order to determine if petitioner's income included more than just his net bank deposits, respondent examined cancelled checks evidencing payments from HELP to petitioner, records of bank deposits, and cash-out slips from petitioner's bank accounts. By adding amounts thus found to have been received by cashing checks without a corresponding deposit or received as cash out, respondent determined that petitioner *16 had $ 22,956.36 [4] in undeposited receipts. We upheld respondent's determination because we considered that determination to be uncontested by petitioners. Sly v. Commissioner, 57 T.C.M. 1111, 1113, 58 P-H Memo T.C. par. 89,385. Based on the evidence in the record, the table below sets forth our findings of petitioner's income and unreported receipts for 1983. We include as additional findings of fact those figures not expressly included as findings of fact in our previous opinion. Stipulated Total Bank Deposit Receipts - 1983
Bureau of Collections Account (XXX-X900-2)
$ 55,855.38 Universal Church Account (XXX-X168-6)
2,435.02 Personal (Sly) Account (XXX-X327-8)
33,261.42 Total
$ 91,551.82 Less items redeposited as nontaxable
transfers between accounts
($ 22,347.00)
Net Bank Deposits
$ 69,204.82 Source of Sly Account Deposits
Attributed to HELP
$ 29,051.64 Attributed to unexplained source
4,209.78 Total
$ 33,261.42 Undeposited Receipts
Sly account # XXX-X327-8:
Cash-out slips traced to HELP checks
$ 13,912.36 Cash-out slips, unexplained source
2,062.00 HELP checks, not deposited or traced to
cash-out slips
6,982.00 Total undeposited receipts
[5] *17 $ 22,956.36 Petitioners' Total Gross Receipts for 1983
Bank Deposit Receipts
$ 69,204.82 Undeposited Receipts
22,956.36 Total Gross Receipts
$ 92,161.18 Determination of Unreported Income
Total Gross Receipts
$ 92,161.18 Reported by petitioner
52,369.58 Unreported income
$ 39,791.60 In support of their motion to reconsider, petitioners first argue that, contrary to the statement in our opinion, they contested respondent's determination of $ 22,956.36 in undeposited receipts. Petitioners support their argument by stating that their post-trial brief "set forth in detail the manner in which they assert their income should have been computed" and that the "alleged [undeposited receipts are] omitted from those computations." While mere assertions in post-trial briefs do not show that petitioners contested respondent's determination, cf. Rule 143(b); Reiff v. Commissioner, 77 T.C. 1169, 1175 (1981); Perkins v. Commissioner, 40 T.C. 330, 340 (1963), we agree that petitioners did contest respondent's determination of undeposited receipts for the following reasons: (1) total gross receipts as determined by respondent included *18 the undeposited receipts in issue; (2) the petition in this case alleged that both the manner respondent used to determine petitioners' total gross receipts and the amount of gross receipts respondent determined were incorrect; and (3) petitioners introduced evidence at trial attempting to prove their version of the amount of total gross receipts for 1983. For clarification only, we therefore amend the wording of our prior opinion to reflect that petitioners did contest respondent's determination of undeposited receipts. Petitioners seek reconsideration of the amount of total gross receipts. Petitioners argue that our finding of $ 22,956.36 in undeposited receipts, when added to the stipulated amount of net bank deposit receipts, results in total gross receipts in an amount which conflicts with the evidence. Petitioners assume that respondent determined that the $ 33,261.42 deposited to the Sly account and the $ 22,956.36 in undeposited receipts were composed entirely of HELP income. Petitioners also assume we upheld this determination. Based on their assumptions, petitioners argue that our prior opinion, in effect, included a finding that Dona Sly received $ 56,217.78 from HELP. *19 Petitioners derived this figure from adding the total undeposited receipts and total deposits to the Sly account, i.e., $ 22,956.36 + $ 33,261.42 = $ 56,217.78. Petitioners contend that since we also explicitly found in our previous opinion that Mr. Sly received $ 50,105.50 from HELP in 1983, an apparent discrepancy of $ 6,112.28 exists. According to petitioners, this discrepancy would cause our previous finding of total gross receipts to be erroneously high. Petitioners would have us revise our finding to reflect a computation of gross receipts which substitutes our finding of $ 50,105.50 received from HELP for the amounts of undeposited receipts and deposits to the Sly bank account, as follows: Deposits to Church account
$   2,435.02 Deposits to Bureau of Collections Acct.
55,855.38 Receipts from HELP
50,105.50 Less nontaxable deposits
(22,347.00)
Total Gross Receipts
$ 36,048.90 The amount by which our previous finding of total gross receipts is erroneously high can, argue petitioners, be found by subtracting their figure for gross receipts from our finding for gross receipts, i.e. , $ 92,161.18 - $ 86,048.90 or $ 6,112.28. Allegedly, this reflects excessive receipts attributed to *20 HELP. According to petitioners, we noted at trial the possible discrepancy which would result if we upheld respondent's determinations. Petitioners cite to the following discussion at pages 17-18 of the transcript: THE COURT: Do the cancelled checks referred to as Exhibit 6-F total the amount of the income on the Form 1099? MS. WISE: Your Honor, they are $ 20 off * * *. THE COURT: Why do we waste time and space and effort with Exhibit 6-F then? Isn't that part of the stipulation process? MS. WISE: 6-F is needed to show that the entire checks were not deposited to the account -- that there was cash out. THE COURT: I -- my question is as to the tax return that the Slys filed. Did that report, as total gross receipts from H.E.L.P., the same amount that was shown on the 1099? MS. WISE: I don't know for sure that it did, but I believe that it did. THE COURT: So what difference does it make whether the income was deposited -- checks were deposited or cashed * * * it would seem to me, [Ms. Wise], that the stipulation should have stated as a fact that the 1099 -- or the checks aggregate a certain amount of dollars, and out of those dollars, a certain amount was deposited in Bank X and an *21 additional amount was received by Petitioners in cash. And that would save all of Exhibit 6-F. We find none of petitioners' arguments either persuasive or well-founded. First, as can be seen, at trial we merely urged a stipulation of facts which would have avoided duplicative exhibits which take up unnecessary time and space. We were not pointing out discrepancies in respondent's determination of petitioners' total gross receipts for 1983. Further, petitioners' argument that our finding of total gross receipts is not supported by the evidence is based on a misreading of our prior opinion. We neither stated nor implied that we upheld determinations by respondent that all Sly account deposits and all undeposited receipts were derived from HELP. On the contrary, petitioners stipulated the amount deposited to the Sly account. That stipulated amount included income from unexplained sources. Likewise, the undeposited receipts were derived from both HELP and unexplained sources. Since we did not make findings in accord with petitioners' assumptions, the apparent $ 6,112.28 discrepancy urged by petitioners is non-existent. Without the alleged discrepancy, petitioners can support the *22 argument that our finding of total gross receipts is erroneous only with the fact that respondent could not identify a source for certain of his 1983 receipts. However, this fact is of no benefit to petitioners. When determining income by the bank deposits method of reconstruction, bank deposits are prima facie evidence of income and respondent need not prove a likely source of any unexplained deposits. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Further, once respondent has determined that unexplained deposits and receipts constitute income, the burden is on petitioners to prove that determination incorrect. Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978); Zarnow v. Commissioner, 48 T.C. 213, 216 (1967). Petitioners offered no explanation as to the source of the unexplained receipts. Petitioners did not prove a nontaxable source for the unexplained receipts. Thus, petitioners failed their burden of proving that deposited and undeposited receipts for which the source was unexplained did not constitute income. Nicholas v. Commissioner, supra at 1064. However, petitioners press *23 their argument by also contending, in effect, that only respondent's determinations of receipts to the Church and Bureau of Collection bank accounts were proper. We construe petitioners' position to be that respondent's use of the bank deposits method of reconstructing income was improper as applied to that portion of petitioners' gross receipts stemming from deposits to the Sly account and undeposited receipts. We do not agree with petitioners' position. First, when a taxpayer's method of accounting does not clearly reflect income, respondent may recompute such income. Sec. 446(b). There is no question that the method of accounting used by petitioners on their 1983 return did not clearly reflect income. Second, this Court has long approved respondent's use of the bank deposits method of reconstructing income. See, e.g., Nicholas v. Commissioner, supra at 1064; Harper v. Commissioner, 54 T.C. 1121, 1129 (1970); Jones v. Commissioner, 29 T.C. 601, 613-614 (1957). Moreover, respondent is not required to follow any particular method of reconstruction. Harbin v. Commissioner , 40 T.C. 373, 377 (1963). Accordingly, we find no impropriety in the fact that respondent determined petitioners' *24 total gross receipts, including receipts from the Sly account and from undeposited amounts, by the bank deposits method of reconstructing income. Further, we find that the record contains substantial evidence supporting our finding, which upheld respondent's determination, of petitioners' total gross receipts. Based on the evidence in the record, the total gross receipts determined by respondent more clearly reflects petitioners' income than the method used by petitioners on their return. Sec. 446(b). In conclusion, petitioners have failed to convince us that our finding of $ 92,161.18 in total gross receipts is in any way in conflict with the evidence, unsupported by the evidence, or otherwise incorrect. Consequently, petitioners' argument that we should ignore their stipulation of net deposits to the Sly account, delete our finding of undeposited receipts, and make a new finding of total gross receipts by substituting HELP income for the other two amounts is unfounded. Petitioners' motion for reconsideration of the amount of total gross receipts is denied. B. Standard Deduction for Meal Expenses
In support of their motion to reconsider our denial of a standard meal expense deduction, *25 petitioners argue that under Rev. Proc. 83-71, 1983-2 C.B. 590, "no proof i[s] needed to be entitled to the standard meal allowance of $ 14 per day." Petitioners maintain that our holding on this issue is inequitable since we upheld a standard deduction for auto expenses covering the same time period. See Sly v. Commissioner, 57 T.C.M. at 1113. Petitioners' argument that because we upheld a standard auto expense deduction we should also uphold the standard meal deduction is based on the fact that some of the proof for each deduction would be the same. Thus, petitioners contend that since the evidence supporting the standard auto deduction also proves the time, place and business purpose of the travel during which Mr. Sly consumed meals, our decision was arbitrary. Petitioners are correct in that they did prove the time, place and business purpose of the travel during which Mr. Sly consumed meals, as well as incurred auto expenses. However, the issue is whether the procedural requirements to qualify for a standard meal deduction have been met. Therefore, the fact that the same evidence would prove the time, place, and business purpose for both auto expenses and the meal expenses *26 is irrelevant. Our grant of a standard auto expense deduction does not override the requirements necessary to qualify for a standard meal expense deduction. Furthermore, there is no inequity in treating each deduction independently as the revenue procedure directs. Rev. Proc. 83-71, 1983-2 C.B. at 591. Rev. Proc. 83-71 allows a taxpayer to elect a standard deduction for meal expenses, rather than substantiating the actual cost of each meal. Rev. Proc. 83-71, 1983-2 C.B. at 590-591. To elect the standard deduction method, the taxpayer computes meal deductions on the taxpayer's yearly return in the manner provided for in the revenue procedure. Rev. Proc. 83-71, 1983-2 C.B. at 591, par. 06. Mr. Sly testified at trial that he used a standard deduction on their return only for auto expenses. Petitioners did not elect to claim the standard meal deduction by computing meal expenses using the method provided for in Rev. Proc. 83-71, i.e., a $ 14 flat rate multiplied by business travel days. In fact, petitioners claimed actual meal expenses on their return, for which they had inadequate substantiation. As we held in our prior opinion, absent such an election on their return petitioners *27 may not claim a standard deduction for unsubstantiated meal expenses. Petitioners' motion to reconsider the deduction is denied. An appropriate order will be entered. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. JoAnn E. Sly is a petitioner solely because she signed a joint return. All references to petitioner in the singular are to Dona H. Sly.↩
3. Cash-out slips are tickets issued showing that the account holder received cash out of the gross amount of checks presented for deposit, reducing the amount of the actual deposit correspondingly.↩
4. Our prior opinion could be misleading in describing this figure as "additional income." This figure is properly described as undeposited receipts.↩
5. In his reply to petitioners' motion, respondent requested we amend the amount of undeposited receipts to include $ 139 from HELP which respondent originally erroneously allocated to nontaxable bank deposits. At this late date such an amendment would be inappropriate. The $ 139 which was not included in petitioners' income is a windfall to petitioners.